IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:12cr102-MHT |
| PAUL RANDALL HOLLON | ) | (WO) |

OPINION AND ORDER

Defendant Paul Randall Hollon is now before the court for sentencing for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). As part of this process, the government and Hollon have filed a most intriguing joint motion, pursuant to 18 U.S.C. § 4244, for a psychiatric evaluation to determine whether Hollon is suffering from a mental disease or defect that, while not rendering Hollon incompetent to stand trial or be sentenced, requires inpatient treatment in lieu of mere incarceration.[1] For the reasons that follow, this motion will be granted.

---

1. This motion is 'intriguing' in the sense that, after more than 30 years on the bench, the undersigned has not been presented with such a motion, or its underlying issue, before.

I.

In March 2012, Hollon was driving his Chevrolet Z71 truck on Highway 31 in Prattville, Alabama, following behind another car occupied by Tim Bowden and Jimmy Townsend. Concerned that Hollon was following him too closely, Bowden pulled into the parking lot of a roller rink and honked his horn. Hollon made a U-turn and barreled toward Bowden and Townsend. He parked his car, attempted to strike Bowden, and, after a struggle, wrested a 12-gauge pump shotgun from his trunk and fired it at Bowden's vehicle, striking Bowden's toolbox and injuring Bowden with the shrapnel. Hollon subsequently pled guilty in federal court to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

At sentencing, the court was made aware that Hollon has a history of acute mental illness. In particular, Hollon produced two mental-health examinations, each of which stated that Hollon suffers from bipolar disorder.

Hollon was evaluated in May 2011 by Dr. Shankar Yalamanchili. In that evaluation, Hollon reported that he had experienced "a high level of irritability, anger and a feeling of his mood swinging wildly ... on and off for the past 15 years." Def. Ex. (Doc. No. 34-1) at 18. Dr. Yalamanchili diagnosed Hollon with both bipolar disorder and polysubstance abuse.

Another evaluation was performed by Dr. David Ghostley in September 2012. Dr. Ghostley concluded that Hollon has "prominent bipolar mood fluctuation marked by frequent episodes of uncontrollable, explosive rage." Def. Ex. (Doc. No. 34-1) at 11. Dr. Ghostley also stated that Hollon has suffered severe emotional trauma, including his brother's suicide and physical and emotional abuse at the hands of his father. Id. He found that Hollon's struggle with these issues had produced "maladaptive behaviors such as rage and self-medicating." Id.

At Hollon's sentencing hearing on October 15, 2012, in response to the evidence about Hollon's mental condition and the connection of that condition to the charged offense and while there was no basis to conclude the Hollon was not mentally competent now or at the time of the offense, "the court and counsel for both the government and ... Hollon brought up the possibility of hospitalization for ... Hollon pursuant to 18 U.S.C. § 4244," Order (No. Doc. 43), rather than his being sentenced and incarcerated solely pursuant to the United States Sentencing Guidelines. The court therefore decided to hold another hearing "on whether ... Hollon sh[ould] be hospitalized pursuant to ... § 4244." Id. The court also required the parties to file briefs on the issue.

On November 2, 2012, the court held such a hearing. Instead of filing briefs the parties jointly asked the court to send Hollon to the Bureau of Prisons for evaluation pursuant to § 4244.

II.

18 U.S.C. § 4244 allows for hospitalization rather than mere imprisonment for a defendant who requires inpatient mental-health treatment.  Under the statute, the court may, on its own motion, order a hearing at any time prior to the sentencing "if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a).[2]  The process incident to commitment pursuant to § 4244 is, in general, as follows.

First, in anticipation of the above hearing, the court may order a psychiatric or psychological examination of the defendant.  The examiner then must file a psychiatric or psychological report with the court

---

2. A defendant found guilty of an offense or the attorney for the government may make such a motion as well, but must do so within ten days after the defendant is found guilty. 18 U.S.C. § 4244(a). Here, this issue was raised for the first time at sentencing, when the ten-day period had long since elapsed.

5

pursuant to 18 U.S.C. § 4247(b) and (c).³ 18 U.S.C. § 4244(b). If the examiner opines that the defendant is suffering from a mental disease or defect but that it does not warrant inpatient treatment, the report must include "an opinion by the examiner concerning the sentencing alternatives that could best accord the defendant the kind of treatment he does need." Id. The examination must be completed within a reasonable period, not to exceed 30 days. 18 U.S.C. § 4247(b).

Second, at the hearing, if the court finds by a preponderance of the evidence that the defendant is suffering from a mental disease or defect and should be committed to a facility for treatment in lieu of incarceration, then the court may commit the defendant to the custody of the Attorney General, who will hospitalize him. 18 U.S.C. § 4244(d).

---

3. 18 U.S.C. § 4247(b) provides that the examination "must be conducted by a licensed or certified psychiatrist or psychologist ... in the suitable facility closest to the court." Section 4247(c) details the information that such a report must include.

When a defendant is committed pursuant to this statute, the commitment "constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty." 18 U.S.C. § 4244(d). The courts of appeals that have interpreted this part of the statute have held that the "maximum term" refers to the statutory maximum for the offense rather than to the sentence at the top of the United States Sentencing Guidelines for that particular defendant. See United States v. Manzano, 108 F. App'x 316, 318 (6th Cir. 2004); United States v. Mann, 130 F.3d 1366, 1367, opinion withdrawn, 138 F.3d 758 (9th Cir. 1997); United States v. Roberts, 915 F.2d 889, 892 (4th Cir. 1990).

Third, a person committed under 18 U.S.C. § 4244 may be released from the hospital when the director of the facility determines that he no longer requires inpatient care. 18 U.S.C. § 4244(e). At that time, if the provisional sentence imposed has not yet expired, then

the court will proceed to sentencing and can modify the provisional sentence according to the Sentencing Guidelines. Id. At minimum, the director of the facility must file a report annually that addresses the mental condition of and recommendations for the defendant. 18 U.S.C. § 4247(e)(B).[4] Regardless of whether the director has determined that the defendant no longer requires care, counsel for the defendant or the defendant's legal guardian may, at any time, file a motion for a hearing, with the court that ordered the commitment, to determine whether the defendant should be discharged. 18 U.S.C. § 4247(h).

---

4. This report must be filed with the court and with any person as the court directs. 18 U.S.C. § 4247(e)(B). In addition, "upon written request of defense counsel, the court may order a videotape record of the defendant's testimony or interview upon which the periodic report is based. ... Such videotape shall be submitted to the court along with the periodic report." § 4247(f).

III.

Hollon's bipolar diagnosis provides the court with reasonable cause to believe that he is suffering from a mental disease or defect that requires treatment in a suitable facility. His prior evaluations are entitled to considerable weight because both were performed relatively recently and therefore likely paint a reliable picture of his current mental health. However, because the evaluations were not ordered pursuant to 18 U.S.C. § 4244, the evaluators were not specifically asked to opine about whether Hollon requires inpatient treatment, nor were they required to recommend alternative treatment programs if inpatient treatment is not needed. Therefore, a new evaluation must be conducted to address the issue now before the court.

Further, the behavior underlying Hollon's conviction typifies the poor impulse control and violence sometimes found in bipolar sufferers, deepening the court's impression that he requires treatment. One aspect of

Hollon's illness is extreme volatility, powerfully illustrated by his violent road rage. See, e.g., 2 Attorney's Medical Deskbook § 29:1.10 (4th ed. 2012) (noting that the manic phase of bipolar disorder is associated with violence); Stephen Allen, <u>Mental Health Treatment and the Criminal Justice System</u>, 4 J. Health & Biomedical L. 153, 161-62 (2008) ("Bipolar disorder and schizophrenia are the mental illnesses most commonly correlated with violence among mentally ill prisoners. Persons with schizophrenia and bipolar disorder are four times as likely as the general population to be arrested for violent crimes."). Therefore, incarcerating Hollon instead of meaningfully addressing his disease risks that he will engage in disruptive behavior, including violence, within the prison. See, e.g., Liesel J. Danjczek, <u>The Mentally Ill Offender Treatment and Crime Reduction Act and Its Inappropriate Non-Violent Offender Limitation</u>, 24 J. Contemp. Health L. & Pol'y 69, 85 (2007) ("[O]ffenders with mental illnesses commonly have

trouble conforming their conduct to the rules and regulations in penal institutions."); U.S. Dept. of Justice, Bureau of Justice Statistics, Doris J. James & Lauren E. Glaze, Mental Health Problems of Prison and Jail Inmates, p. 10 (2006), <u>available at</u> http://bjs.ojp.usdoj.gov/content/pub/pdf/mhppji.pdf (finding that mentally ill prisoners were more likely than prisoners without mental health problems to break facility rules; 58 % of state prisoners with mental illness had been charged with rule violations, while only 43 % of prisoners without such problems had been so charged).

This could be both dangerous to other prisoners and deeply disadvantageous to Hollon. Indeed, prisoners with inadequately treated mental illness may ultimately serve longer sentences because their disease engenders disciplinary infractions. <u>See</u> Michael Vitiello, <u>Addressing the Special Problems of Mentally Ill Prisoners: A Small Piece of the Solution to Our Nation's</u>

11

Prison Crisis, 88 Denv. U. L. Rev. 57, 67 (2010) (explaining that because of their "disruptive behavior, [mentally ill prisoners] tend to serve longer prison sentences than other offenders").

Further, while mental-health treatment is available in some prisons, prisons were not designed to be psychiatric hospitals. Despite even the best efforts of penal institutions to address mental-health concerns, the prison environment exacerbates mental illness because of its punitive and inherently stressful nature. See, e.g., Mark J. Heyrman, Mental Illness in Prisons and Jails, 7 U. Chi. L. Sch. Roundtable 113, 116-119 (2000). Hollon may therefore emerge from custody a more dangerous man and with a more serious mental illness than when he entered. Neither Hollon nor society at large stands to benefit from such a result.

***

Accordingly, it is ORDERED as follows:

(1) Defendant Paul Randall Hollon and the government's joint motion for defendant Hollon to be sent to the Bureau of Prisons for evaluation pursuant to 18 U.S.C. § 4244 (Doc. No. 44) is granted.

(2) The United States Marshal for this district shall immediately remove defendant Hollon to the custody of the Attorney General for placement in a suitable facility where he is to be committed for the purpose of being examined for a reasonable period not to exceed 30 days by a licensed or certified psychiatrist or psychologist pursuant to the provisions of 18 U.S.C. § 4244(b) and § 4247(b) and (c).

(3) A psychiatric or psychological report shall be filed with the court pursuant to the provisions of 18 U.S.C. § 4244(b) and § 4247(b) and (c). If the report includes the opinion that defendant Hollon is suffering from a mental disease or defect but that it does not require custody for care or treatment in a suitable

facility, the report shall also include, pursuant to 18 U.S.C. § 4244(b), an opinion by the examiner concerning the sentencing alternatives that could best accord the defendant Hollon the kind of treatment he does need.

DONE, this the 13th day of November, 2012.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE